**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MYRIAM ROA RESTREPO, <br><br> Petitioner, <br><br> v. <br><br> KRISTI NOEM, ET AL., <br><br> Respondents. | Case No. 2:26-cv-01735-AJR <br><br> **MEMORANDUM DECISION AND ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE ON PRIOR ORDER OF RELEASE ON OWN RECOGNIZANCE** |

**I.**

**INTRODUCTION & PROCEDURAL HISTORY**

On February 18, 2026, Petitioner Myriam Roa Restrepo ("Petitioner"), an immigration detainee represented by counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (the "Petition"), challenging her detention at the Adelanto Detention Center in Adelanto, California.  (Dkt. 1 at 2-3.)  Petitioner is a citizen of Columbia in the custody of U.S. Immigration and Customs Enforcement ("ICE"), a component of the Department of Homeland Security ("DHS").  (Id. at 2; Dkt. 1-2 at 2.)  On November 29, 2024, Petitioner crossed into the United States from Mexico with her spouse, Edgar De Jesus Rivera Sanchez, and was

apprehended by border patrol agents.  (Dkt. 1 at 2; Dkt. 1-2 at 2.)  Petitioner was then released on her own recognizance pursuant to an Order of Release on Own Recognizance ("OROR").  (Dkt. 1 at 2; Dkt. 1-2 at 2, 9.)  Petitioner was ordered to appear before an immigration judge in Van Nuys, California, approximately seven months later.  (Dkt. 1 at 2; Dkt. 1-2 at 2, 5-7, 11.)  DHS provided an initial Notice to Appear requiring Petitioner to appear in immigration court on July 2, 2025, (Dkt. 1-2 at 5-7), but later provided an amended Notice to Appear requiring Petitioner to appear in immigration court on June 24, 2025.  (Id. at 11.)

On June 24, 2025, Petitioner appeared in-person with her husband, Mr. Rivera Sanchez, without representation, for her first hearing before the Van Nuys Immigration Court.  (Dkt. 1 at 2; Dkt. 1-2 at 2.)  At the hearing, DHS moved to dismiss the proceedings with prejudice pursuant to 8 C.F.R. §§ 239.2(a)(7), 1239(c), based on the determination that circumstances after issuance of the Notice to Appear had changed to such an extent that continuation was no longer in the best interest of the government.  (Dkt. 1-2 at 2; 15.)  Immediately following the hearing, Petitioner was arrested outside of court.  (Dkt. 1 at 2; Dkt. 1-2 at 3.)  Petitioner was not provided with any notice or a pre-deprivation hearing.  (Dkt. 1 at 2; Dkt. 1-2 at 3.)  Petitioner does not have any criminal history.  (Dkt. 1-2 at 3, 28.)

On February 26, 2026, Respondents Kristi Noem, in her official capacity as Secretary of DHS, Pamela Bondi, in her official capacity as U.S. Attorney General, Todd Lyons, in his official capacity as Acting Director of ICE, Fereti Semaia, in his official capacity as Warden, Adelanto Detention Facility, and Jaime Rios, in his official capacity as Field Office Director for Enforcement and Removal Operations, Los Angeles Field Office (collectively "Respondents") filed an Answer to the Petition (the "Answer").  (Dkt. 9.)  On March 5, 2026, Petitioner filed a Reply in Support of the Petition (the "Reply").  (Dkt. 10.)

On March 9, 2026, Immigration Judge Carlos Maury entered a Final Administrative Order of Removal to Petitioner.  (Dkt. 17-2 at 2.)  The Immigration

Judge denied Petitioner's applications for asylum, withholding of removal, and protection under the Convention Against Torture.  (Id. at 7.)  The Immigration Judge further ordered that Petitioner be removed to either Ecuador or Guatemala.  (Id.)

On March 11, 2026, the Court issued a Memorandum Decision and Order granting interim relief based on Respondents' concession that Petitioner was at least entitled to a bond hearing before a neutral immigration judge pursuant to 8 U.S.C. § 1226(a). (Dkt. 14. at 4.)  Specifically, the Court granted Respondents 7 days to either provide a bond hearing or release Petitioner, which is the relief Respondents requested this Court to order.  (Id.)  The Court acknowledged that Petitioner sought more than conditional release and argued that she was entitled to immediate release on her prior OROR.  (Id.)  Therefore, the Court advised that it would retain jurisdiction over Petitioner's remaining claims and would further adjudicate them as necessary after Respondents complied with the Court's order granting interim relief. (Id.)

On March 17, 2026, Immigration Judge Carlos Maury held a bond hearing for Petitioner. (Dkt. 17-1 at 2-3.)  The Immigration Judge denied bond as follows:

> "No jurisdiction as there is Final Administrative Order of Removal under INA 241(a)(2) at this time. No appeal of the Immigration Judge's decision denying relief has been filed. The Immigration Judge issued a removal order on March 9, 2026, therefore the Court denies bond in the alternative as a risk of flight."

(Id. at 2.)  Because the bond hearing did moot the Petition, the Court will proceed to adjudicate Petitioner's remaining claims.

Also on March 17, 2026, Petitioner filed a Statement Regarding Status of Bond Hearing (the "Statement").  (Dkt. 16.)  Also on March 17, 2026, Respondents filed a Notice of Compliance Regarding Immigration Bond Hearing (the "Notice of Compliance").  (Dkt. 17.)  On March 19, 2026, Petitioner filed a Response to Respondents' Notice of Compliance (the "Response").  (Dkt. 18.)  On March 20, 2026, Respondents filed a Reply to Petitioner's Response.  (Dkt. 19.)  The parties

3

have consented to proceed before the undersigned U.S. Magistrate Judge for all purposes.  (Dkts. 7, 12, 13.)  For the reasons set for the below, the Court GRANTS the Petition and orders Respondents to immediately release Petitioner from custody pursuant to the terms of her prior OROR.

## II.
### SUMMARY OF PETITIONER'S CLAIMS

Petitioner asserts two claims for relief.  (Dkt. 1 at 5-10.)  In Count One, Petitioner contends that Respondents deprived Petitioner of her liberty without procedural protections required by the Due Process Clause of the Fifth Amendment when they re-arrested and detained her without providing a pre-deprivation hearing.  (Id. at 5.)  Specifically, Petitioner contends that she was entitled to a pre-deprivation hearing before a neutral adjudicator to determine whether circumstances had materially changed since her release in the fall of 2024 under the OROR, such that changes to the terms of her conditional release would now be warranted.  (Id.)  In Count Two, Petitioner contends that Respondents deprived her of her liberty without any legitimate purpose in violation of her substantive due process rights under the Fifth Amendment.  (Id. at 9.)  Specifically, Petitioner contends that there is no legitimate purpose to detain her because she is not a risk of flight or danger to the community, and there is no reason for the departure from her prior OROR.  (Id. at 10.)  Petitioner further contends that here are compelling public interests warranting her release from custody.  (Id.)

Based on these claims, Petitioner seeks an order that she not be transferred outside of this judicial district while the action is pending.  (Id. at 11.)  Petitioner further seeks an order to show cause why the Petition should not be granted.  (Id.)  Petitioner seeks a writ of habeas corpus directing Respondents to release her from custody and reinstate her OROR with the same conditions in place at the time of her re-detention.  (Id.)  Finally, Petitioner seeks a writ of habeas corpus enjoining

Respondents from re-detaining Petitioner unless her re-detention is ordered at a custody hearing before a neutral arbiter in which the government bears the burden of proving, by clear and convincing evidence, that she is a flight risk or danger to the community.  (Id.)

## III.

## LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law.  See U.S. Const., amend. V.  There is no question that these protections extend to noncitizens present in the United States.  See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)).  Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ."  Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990).  Indeed, the Due Process Clause provides both procedural and substantive protections.  See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)).  To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976).  See Rodriguez Diaz v. Garland, 53

F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)).  Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights."  Regino, 133 F.4th at 959-60.  Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest."  Reno v. Flores, 507 U.S. 292, 302 (1993).  By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests."  Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted).  To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest."  Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted).  With that careful description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed."  Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

6

# IV.

# ANALYSIS

**A.** **Petitioner's Arrest On June 24, 2025 Without A Pre-Deprivation Hearing Violated Her Procedural Due Process Rights.**

As an initial matter, the Court concludes that once Petitioner was released on OROR back on November 29, 2024, (Dkt. 1-2 at 9), she acquired "a protected liberty interest in remaining out of custody." Pinchi v. Noem, 792 F.Supp.3d 1025, 1032 (N.D. Cal. July 24, 2025) (collecting cases). Indeed, "the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." Id. (internal quotation marks, brackets, and ellipses omitted). This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972). Moreover, Petitioner's release on OROR necessarily reflects a determination by DHS that Petitioner was neither a danger to the community nor a flight risk. See 8 C.F.R. § 1236.1(c)(8).

Petitioner contends that she was in full compliance with the conditions of her prior OROR, (Dkt. 1 at 3), and Respondents have not disputed this contention. (Dkt. 9.) It is also undisputed that Petitioner was taken back into custody without a pre-deprivation hearing on June 24, 2025, when Petitioner appeared at the Van Nuys Immigration Court, as she was instructed to do. (Dkt. 1 at 2; Dkt. 1-2 at 3.) Thus, the Court concludes that Petitioner's arrest on June 24, 2025 without a pre-deprivation hearing violated her procedural due process rights. See, e.g., Fernandez Lopez v. Wofford, 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained."). Respondents essentially conceded this point and offered to provide a post-deprivation bond hearing more than eight months after Petitioner was taken back into custody. (Dkt. 2 at 2.) For this reason,

the Court ordered interim relief by directing Respondents to either provide an individualized bond hearing under 8 U.S.C. § 1226(a) within seven days or release Petitioner from custody.  (Dkt. 14 at 4.)

As set forth above, Petitioner received a bond hearing on March 17, 2026. (Dkt. 17-1 at 2-3.)  However, the Immigration Judge concluded that there was no jurisdiction to consider Petitioner for bond "as there is [a] Final Administrative Order of Removal Under INA 241(a)(2) at this time." (Id. at 2.)  This is directly contrary to this Court's March 11, 2026 Order and Respondents' concession that Petitioner was entitled to an individualized bond hearing pursuant to 8 U.S.C. § 1226(a).  (Dkt. 14 at 4.)  Respondents now contend that the Immigration Judge's finding of no jurisdiction was justified by the changed circumstances of the March 9, 2026 removal order which subjected Petitioner to mandatory detention.  (Dkt. 19 at 2.)  But Respondents ignore the fact that the Court ordered the bond hearing pursuant to 8 U.S.C. § 1226(a), and Respondents conceded the bond hearing was appropriate, as a remedy for the fact that Petitioner has been in custody for more than 8 months after having been re-arrested without notice or a pre-deprivation bond hearing in violation of her due process rights.  (Dkt. 14 at 4.)  Therefore, the failure to provide Petitioner with a bond hearing where she actually had the possibility of release, regardless of March 9, 2026 removal order, was a further violation of Petitioner's due process rights and this Court's March 11, 2026 Order.  See, e.g., Maldonado Vazquez v. Feeley, 805 F. Supp. 3d 1112, 1148 (D. Nev. 2025) ("Where, as here, a noncitizen is detained after having been ordered released, without any process provided by the Government for challenging his continued detention, detention becomes arbitrary and violates due process.").

**B.      The Court Has Jurisdiction To Review The Immigration Judge's Detention Determination For Abuse of Discretion.**

Respondents concede that this Court has jurisdiction to review the Immigration Judge's detention determination for abuse of discretion.  (Dkt. 19 at 2-

3); see C.A.R.V. v. Wofford, 2026 WL 241823, at *3 (E.D. Cal. Jan. 29, 2026) ("In constitutional challenges to an IJ's detention determination, a habeas court generally reviews mixed questions of fact and law under an 'abuse of discretion' standard."); Martinez v. Clark, 124 F.4th 775, 784 (9th Cir. 2024) ("When questions require a close review of agency-found facts, like the 'dangerousness' determination, we review for an abuse of discretion."). Abuse of discretion review "is limited to whether the IJ's decision reflects clear legal error or is unsupported by sufficient evidence." C.A.R.V., 2026 WL 241823, at *3 (internal quotation marks omitted). However, Respondents contend that this Court should decline to review the Immigration Judge's detention determination because Petitioner has not yet exhausted her administrative remedies by appealing to the Board of Immigration Appeals ("BIA"). (Dkt. 17 at 3); see Leonardo v. Crawford, 646 F.3d 1157, 1160 (9th Cir. 2011) ("When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused.").

Respondents also concede that in the context of a habeas petition, administrative exhaustion is merely prudential, and not mandatory. (Dkt. 17 at 3); see Y.S.G. v. Andrews, 2025 WL 2979309, at *7 (E.D. Cal. Oct. 22, 2025) ("The federal habeas statute under which this case was filed does not require exhaustion of administrative remedies."). Indeed, the exhaustion requirement may be waived "where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004) (internal quotation marks omitted). Petitioner bears the burden of showing that an excuse for exhaustion applies. See Leonardo, 646 F.3d at 1161.

Respondents contend that "at this stage, the Habeas Petition lacks precedent to show that Petitioner's irreparable harm is sufficiently weighty for the Court to

excuse exhaustion requirements." (Dkt. 17 at 3.)  However, the Court concludes that Petitioner has satisfied her burden to show that she will suffer irreparable harm every day that she remains in custody based on a bond hearing that did not comply with either the Court's March 11, 2026 Order and/or applicable statutory/regulatory requirements.  See, e.g., Rodriguez Cabrera v. Mattos, 808 F. Supp. 3d 1159, 1176 (D. Nev. 2025) ("Moreover, requiring Petitioner to be subjected to unlawful detention pending the BIA's decision would cause irreparable harm, which is a separate and independent basis to waive exhaustion under Laing."); Doe v. Becerra, 787 F. Supp. 3d 1083, 1095 (E.D. Cal. 2025) ("This violation of Petitioner's due process rights is sufficient to satisfy the irreparable harm requirement.").

Indeed, Petitioner has been separated from her family since June 24, 2025 and is the primary caretaker for her husband who suffers from a traumatic brain injury, as well as permanent disabilities and mental health conditions that make it difficult for him to walk or communicate.  (Dkt. 1 at 10; Dkt. 1-2 at 22.)  Accordingly, the Court concludes that it is appropriate to waive the prudential administrative exhaustion requirement based on Petitioner's showing of irreparable harm.  The Court concludes in the alternative that it is also appropriate to waive the administrative exhaustion requirement to ensure compliance with the Court's March 11, 2026 Order.  See, e.g., C.A.R.V., 2026 WL 241823, at *4 ("As mentioned previously, any alleged exhaustion requirement in this case must fully contend with the Court's continuing authority to enforce its own injunction.").

**C.**     **The Immigration Judge's Denial Of Bond Was An Abuse of Discretion.**

Turning to the March 17, 2026 bond hearing, the Court has already determined that the Immigration Judge failed to comply with this Court's March 11, 2026 Order by concluding that there was no jurisdiction to consider Petitioner for bond.  (Dkt. 17-1 at 2.)  This was clear error and deprived Petitioner of a bond hearing where she actually had the possibility of release (which is what the Court ordered and Respondents conceded was appropriate to remedy the prior violation of

Petitioner's due process rights). See, e.g., Martinez, 124 F.4th at 785 (explaining that application of an incorrect legal standard is clear error). The Immigration Judge further denied bond in the alternative as follows: "The Immigration Judge issued a removal order on March 9, 2026, therefore the Court denies bond in the alternative as a risk of flight." (Dkt. 17-1 at 2.) Thus, the Immigration Judge relied solely on the existence of the March 9, 2026 removal order to find that Petitioner posed a flight risk.[1] (Id.) This finding was an abuse of discretion.

The Ninth Circuit has explained that when assessing whether an alien "is a danger to the community or a risk of flight," an immigration judge may consider the following factors:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

Martinez, 124 F.4th at 783 (internal quotation marks omitted). An immigration judge has "broad discretion to weigh the listed factors and add any factors not mentioned or discount those that are less probative." Id. at 784.

However, the Ninth Circuit has also explained that an immigration judge

---

[1] It is not clear from the Immigration Judge's Order what legal standard was applied, but Respondents contend that the Immigration Judge placed the burden on Petitioner to show by clear and convincing evidence that she was not a flight risk. (Dkt. 17 at 2.)

"abuses its discretion when it fails to consider and address in its entirety the evidence submitted by a petitioner and to issue a decision that fully explains the reasons for [its decision]." Franco-Rosendo v. Gonzales, 454 F.3d 965, 966 (9th Cir. 2006) (internal quotation marks omitted); see also Barrera-Leyva v. Immigr. and Naturalization Serv., 653 F.2d 379, 380 (9th Cir. 1981) (stating that the immigration judge abused its discretion by "fail[ing] to consider all of the relevant factors"). Here, the Order of the Immigration Judge fails to include any indication that the Immigration Judge considered any of the relevant factors in determining that Petitioner posed a flight risk. (Dkt. 17-1.) For example, there is no discussion of Petitioner's prior release on OROR, (Dkt. 1-2 at 2, 9), her prior compliance with all conditions of her release, (Dkt. 1 at 3), including her appearance at Van Nuys Immigration Court as directed, (id. at 2; Dkt. 1-2 at 2), or her complete lack of criminal history, (Dkt. 1-2 at 3, 28). Instead, the Immigration Judge relied solely on the March 9, 2026 removal order to find that Petitioner must be detained based on the risk of flight. (Dkt. 17-1 at 2.) The Immigration Judge's failure to consider all relevant factors relating to risk of flight constitutes an abuse of discretion. See, e.g., Miri v. Bondi, 2026 WL 622302, at *9 (C.D. Cal. Mar. 5, 2026) (holding that immigration judge abused its discretion in denying bond because the judge "did not explain the reasons for denying Miri's bond," and "did not describe which Martinez factors were considered, if any, or what evidence was relied on").

Moreover, the Immigration Judge's exclusive reliance on the March 9, 2026 removal order to find that Petitioner posed a flight risk constitutes a categorical denial of bond to any alien who is subject to a removal order and violates Petitioner's right to an individualized determination. See, e.g., Rodriguez Diaz v. Garland, 53 F.4th 1189, 1202 (9th Cir. 2022) (explaining that 8 U.S.C. § 1226(a) requires an "individualized bond determination" (internal quotation marks omitted)). This also violates the Court's March 11, 2026 Order which required Respondents to "provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a)" because such a

12

hearing by definition must be individualized.  (Dkt. 14 at 5.)  Therefore, the Court concludes that the Immigration Judge's determination that Petitioner posed a flight risk based solely on the March 9, 2026 removal order constitutes an abuse of discretion for these additional reasons.

**D.      The Appropriate Remedy Is Release On Petitioner's Prior OROR.**

The federal habeas corpus statute "does not limit the relief that may be granted to discharge of the applicant from physical custody." Carafas v. LaVallee, 391 U.S. 234, 238 (1968).  "Its mandate is broad with respect to the relief that may be granted." Id.  "It provides that '[t]he court shall . . . dispose of the matter as law and justice require.'" Id. (quoting 28 U.S.C. § 2243); see also Brown v. Davenport, 596 U.S. 118, 127-28 (2022) (explaining that district courts have equitable discretion, "as law and justice require," for remedying unlawful detention in habeas proceedings).  The Court exercised restraint by initially providing Respondents an opportunity to provide an individualized bond hearing pursuant to 8 U.S.C. § 1226(a), rather than ordering release.  (Dkt. 14 at 5.)  However, in light of the violations of this Court's March 11, 2026 Order set forth above, the Court concludes that the only remedy at this point which can address the harm suffered by Petitioner is immediate release from custody subject to the terms of her prior OROR.  See, e.g., Aguirre Solis v. Noem, 2026 WL 396432, at *7 (D. Nev. Feb. 12, 2026) ("[T]he Court, in its equitable discretion, finds the unique harms suffered by Petitioner because of the government's violation of his due process rights require the remedy of immediate release from custody.").

Moreover, the Court finds it necessary to enjoin Respondents from re-detaining Petitioner without first providing Petitioner with individualized notice describing the change in circumstances necessitating her arrest and/or detention, and a pre-deprivation bond hearing before an immigration judge at which Respondents will bear the burden of proof.  Petitioner shall not be detained unless Respondents demonstrate by clear and convincing evidence at the pre-deprivation hearing that

13

Petitioner is a flight risk or a danger to the community, and that there is no condition or combination of conditions that will reasonably assure Petitioner's appearance and/or the safety of any other person in the community.  This additional relief is necessary to provide complete relief from unlawful detention because otherwise Petitioner would be subject to immediate arbitrary re-detention.  See, e.g., Esquivel Pacheco v. LaRose, 2026 WL 242300, at *7 (S.D. Cal. Jan. 29, 2026) ("Consistent with many other courts, the Court enjoins any further detention of Petitioner unless the government first—prior to any detention—justifies the deprivation of his liberty interest at a bond hearing.").

\\

\\

\\

\\

\\

\\

\\

\\

\\

14

**V.**

**CONCLUSION**

Respondents shall immediately release Petitioner from custody and reinstate her OROR with the same conditions in place at the time of her re-detention. **Respondents shall file a notice of compliance within twenty-four hours.** Respondents are enjoined from re-detaining Petitioner without first providing Petitioner with individualized notice describing the change in circumstances necessitating her arrest and/or detention, and a pre-deprivation bond hearing before an immigration judge at which Respondents will bear the burden of proof. Petitioner shall not be detained unless Respondents demonstrate by clear and convincing evidence at the pre-deprivation hearing that Petitioner is a flight risk or a danger to the community, and that there are no conditions or combination of conditions that will reasonably assure Petitioner's appearance and/or the safety of any other person in the community.

IT IS SO ORDERED.

DATED:   March 23, 2026

_____
HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE